**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 19-21183-CIV-WILLIAMS**

GOVERNMENT EMPLOYEES INSURANCE
CO., *et. al.*

　　　　Plaintiffs,

vs.

LUIS LOPEZ MAS, M.D., *et al*

　　　　Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS

　　　**THIS MATTER** is before the Court on Defendants' motion to dismiss[1] (DE 32).

Plaintiffs filed a response in opposition (DE 36), and Defendants replied (DE 40).  For the

reasons discussed below, Defendants' motion is (DE 32) is **DENIED**.

　　I.　　**BACKGROUND**

　　　　**A. Factual Allegations**

　　　This action arises out of the alleged fraudulent insurance billing practices of three

medical clinics[2], E-Z Medical, Davila Medical, and Westchester Medical (collectively, the

"Medical Clinics").  Plaintiffs claim that the owners and staff used the Medical Clinics as

vehicles for submitting large volumes of fraudulent, non-reimbursable personal injury

---

[1] The motion to dismiss was filed by the remaining defendants in this case: Davila
Medical, E-Z Medical, Westchester Medical, Jose Davila, Leonel Diaz-Pairol, Yoandry
Espinosa Morales, Luis Lopez Mas, Rafael Norberto Hernandez, Mayte Fernandez,
Yanliceth Rodriguez, Daimy N. Diaz, Maria C. Vital, and Ailem Pajon (collectively
"Defendants").

[2] Plaintiffs' claims against defendants Baracusa Health, Belkys Corrales, and Angela G.
Ferrer Romero have been dismissed without prejudice.  (DE 57.)

protection ("PIP") insurance charges to GEICO and other PIP insurers.  GEICO asserts that the Medical Clinics' PIP claims were fraudulent or ineligible for reimbursement under Florida's Motor Vehicle No-Fault Law ("Florida's No-Fault Law")[3] because: the Medical Clinics lacked a legitimate medical director, and therefore, operated in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 (the "Clinic Act"); the medical services rendered were unlawfully performed by staff members who lacked the requisite licenses and supervision; the owners and staff misrepresented in claim submission forms that these services were performed or directly supervised by Dr. Mas, the purported "medical director" of each clinic; and the owners and staff engaged in "upcoding" by submitting claims using billing codes that exaggerated the level of services provided.

### 1. <u>Violation of the Clinic Act</u>

In order for medical services to be eligible for PIP reimbursements under Florida's No-Fault Law, the performing medical clinic must comply with the Clinic Act, which requires medical clinics to appoint a medical director to accept legal responsibility for certain enumerated duties, including to "conduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful," to "take immediate corrective action" upon discovery of an unlawful charge, and to "ensure that all health care practioner at the clinic have active appropriate certification or licensure for the level of care being

---

[3] Florida's No-Fault Law requires automobile insurers to provide PIP benefits to insured. Fla. Stat. §§ 627.730-627.7405.  The law states "the medical benefits shall provide reimbursement only for such services and care that are <u>lawfully</u> provided, supervised, ordered or prescribed." Fla. Stat. § 627.736(1)(a).  Additionally, "[a]n insurer is not required to pay a claim or charges for any service or treatment that was <u>not lawful</u> at the time rendered." Fla. Stat. § 627.736(5)(b)(1)(b) (emphasis added).  The statute defines "lawful" or "lawfully" as "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Fla. Stat. § 627.732(11).

provided." Fla. Stat. § 400.9935.  Plaintiffs claim that the Medical Clinics did not appoint legitimate medical directors to perform these duties, and therefore, operated in violation of the Clinic Act—rendering all PIP claims that were submitted to GEICO ineligible for reimbursable on this basis alone.  (DE 1 ("Complaint") at ¶¶ 54-72, 73-87, 104-118.)

Specifically, GEICO asserts that the Medical Clinic owners knew that if they retained a legitimate medical director who complied with the Clinic Act, they could not submit fraudulent billings to GEICO.  (Id. at ¶¶ 56, 74, 106.)  Thus, each Medical Clinic appointed Dr. Mas as its "phony medical director."  (Id. at ¶¶ 64, 77, 109.)  Mas represented himself as the clinics' medical director to the public, but ceded all decision-making and oversight authority to the owners, and did not fulfill any of his statutory duties. (Id. at ¶¶ 63-64, 79-80, 111-112.)  The appointment of Dr. Mas enabled the owners to represent the Medical Clinics as legitimate and compliant with the Clinic Act to the Florida Health Care Administration, insurance companies, and patients.  Id.  Without a legitimate medical director to impede their operation, the owners and staff performed, and billed GEICO for, "massive" amounts of unlawful and medically unnecessary services.  (Id. at ¶¶ 69, 85, 116.)

### 2. Unlawfully Performed Services and Misrepresentations in the HCFA-1500 Forms

GEICO also asserts that the claims are not reimbursable because the billed for services were unlawfully performed by staff members who lacked the requisite licenses and supervision.  (Id. at ¶¶ 120-190, 191-231, 277-321.)  At E-Z Medical, initial and follow-up patient examinations were performed by physician assistants, and physical therapy services were conducted by unqualified and unsupervised physical therapist assistants. (Id. at ¶¶ 127, 151.)  Similarly, at Davila Medical and Westchester Medical, physical

therapy services were performed by unsupervised massage therapists without the requisite license.  (*Id.* at ¶¶ 196, 284.)

Plaintiffs further alleges that the HCFA-1500 forms that were submitted to GEICO misrepresented the identities of the service provider and the level of supervision provided in Box 31 of the form ("Box 31").[4]  (*Id.* at ¶¶ 176, 222, 310.)  The owners and staff knew that they could not legally recover PIP benefits for services performed by their unlicensed and unsupervised staff.  (¶¶ 175, 221, 309.)  Thus, they falsely represented that Dr. Mas had personally provided or directly supervised the underlying services, and omitted references to the unqualified and unsupervised staff members who had actually performed the services. (*Id.* at ¶¶ 176, 222, 310.)

### 3.  **"Upcoding" and Billing for Medically Unnecessary Services**

GEICO further contends that the claims are not reimbursable because Defendants "upcoded" their bills for initial examinations—*i.e.*, used billing codes that corresponded to a greater payment than the amount payable with the correct code.[5]  By using billing codes 99203 and/or 99204 for initial examinations, Defendants misrepresented that the insured presented problems that were moderately severe (99203) or seriously threatening (99204), when in fact, the insured had no injuries or only "garden-variety" sprains and strains.  (*Id.* at ¶¶ 335-352, 463-477, 721-739, 827.)  These codes also misrepresented

---

[4] Florida's No-Fault Law requires that all PIP billing "must, to the extent applicable, comply with the CMS 1500 form instructions . . . ." Fla. Stat. § 627.736.  Pursuant to CMS 1500 form instructions, the name of the healthcare provider who performed or directly supervised the underlying physical therapy treatment must be listed on the HCFA-1500 form.  *See* Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.

[5] Florida's No-Fault Law requires that all PIP billing "must follow the Physician's Current Procedural Terminology [CPT billing codes]." Fla. Stat. § 627.736.

the extent of the examinations as "detailed" (99203) or "comprehensive" (99204), the level of the medical decision-making as "low" (99203) or "moderately" complex (99204), and the time spent (99204 represents that the examination was at least 45 minutes).  (*Id.* at ¶¶ 353-412, 478-541, 740-816.)   In reality, the initial examinations were brief and perfunctory, and involved no medical decision-making at all. (*Id.* at ¶¶ 484, 747.)  During each examination, Defendants provided the patient with the same "predetermined" diagnosis, and prescribed identical medically unnecessary physical therapy plan without regard to the patient's true circumstances.  (*Id.* at ¶¶ 386, 515, 798.)

For follow-up examinations, Defendants "upcoded" with billing codes 99213 or 99214, which also exaggerated the severity of the underlying issue and the examination results.  (*Id.* at ¶¶ 413-446, 542-575, 817-860.)  Follow-up examinations also involved no legitimate medical decision-making.   *Id.*   Instead, Defendants reiterated the "predetermined" diagnoses from the insured's initial examination, recommended more medically unnecessary physical therapy treatments, or discharged the patient if the PIP benefits were exhausted.  *Id.*

### B. Procedural History

On March 3, 2019, Plaintiffs filed a complaint against Defendants asserting violations of RICO sections 1962(c) and (d), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Civil Remedies for Criminal Practices Act ("FCRCPA"), common law fraud, and unjust enrichment.  GEICO also seeks a declaratory judgment that the Medical Clinics have no right to receive payment for any of Defendants' pending bills.  On May 28, 2019, Defendants moved to dismiss the Complaint.

### II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's consideration is limited to the allegations presented.  *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).  Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

III.   **DISCUSSION**

Defendants move to dismiss certain aspects of GEICO's complaint arguing that the Complaint fails to establish that: the unsupervised massage therapists performed unlawful physical therapy; the physician assistants and physical therapy assistants at E-Z Medical performed medical services without adequate supervision; the practices of "upcoding" initial examinations and misrepresenting Dr. Mas as the service provider in Box 31 of the HCFA-1500 forms were unlawful; the results of patient examination were

falsified and constitute fraudulent misrepresentation; and Dr. Mas's failure to take corrective action against certain alleged practices violated his statutory duties as medical director under the Clinic Act. Defendants further contend that certain of Plaintiffs' fraud based allegations fail to satisfy the particularity requirements of Rule 9(b).

### A. Physical Therapy Services by Unsupervised Massage Therapists

Defendants first argues that the Complaint fails to state a claim to the extent the allegations rely on the notion that an unsupervised massage therapist cannot lawfully provide physical therapy services without a physical therapy license. Defendants concede that under Florida's No-Fault Law, massage and services performed by massage therapists are ineligible for PIP reimbursement.[6] They also acknowledge that Florida's Physical Practices Therapy Act generally prohibits individuals without physical therapist licenses from practicing physical therapy.[7] Defendants nonetheless assert that massage therapists without physical therapist licenses may lawfully perform physical therapy services pursuant to an exception to the general prohibition, which provides:

> No provision of this chapter shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the statutes applicable to the profession of chiropractic physician, podiatric physician, doctor of medicine, massage therapists, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath.

---

[6] *See* Fla. Stat. § 627.736(1)(a)(5) ("Medical benefits do not include massage . . . and a licensed massage therapist or licensed acupuncturist may not be reimbursed for medical benefits under this section.").

[7] *See* Fla. Stat. § 486.028 ("No person shall practice, or hold herself or himself out as being able to practice, physical therapy in this state unless she or he is licensed in accordance with the provisions of this chapter; however, nothing in this chapter shall prohibit any person licensed in this state under any other law from engaging in the practice for which she or he is licensed.").

Fla. Stat. § 486.161(1) (emphasis added).

Defendants interpret section 486.161(1) as a wholesale exemption from the Physical Therapy Practices Act's licensing requirement, a reading Plaintiffs correctly note would allow the exception to swallow the rule.  Two cases in this District have considered and rejected Defendants' interpretation.  In each case, the court concluded that when a service performed by an unsupervised massage therapist involves the use of "physical agents as a part of, or incidental to" the practice of massage, the entire service—including the use of physical agents—constitutes massage, not physical therapy, which is ineligible for PIP reimbursement.  *See Gov't Employees Ins. Co. v. Quality Diagnostic Health Care, Inc.*, 369 F. Supp. 3d 1292, 1301 (S.D. Fla. 2019); *Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 2019 WL 1992930, at *5-6 (S.D. Fla. Apr. 19, 2019).

In *Quality Diagnostic Health Care*, Judge Martinez explained that based on a review of Florida case law[8], the purpose of section 484.161(1) is to allow those "professionals licensed in enumerated areas to continue to perform medical services already covered under their professional license, notwithstanding the fact that the use of physical agents as part of those medical services also constitutes the 'practice of physical therapy' Under the Physical Therapy Act."  *Quality Diagnostic Health Care*, 369 F. Supp. 3d at 1301.  The court explained that section 486.161(1) ensures that the requirements of the Physical Therapy Practices Act do not impede the ability of these professionals to perform the range of services that they were licensed to perform, by exempting these services from the statutory licensing requirement.  In light of this purpose, Judge Martinez

---

[8] *State Farm Mut. Auto. Ins. Co. v. Universal Med. Ctr. of S. Fla., Inc.*, 881 So. 2d 557 (Fla. Dist. Ct. App. 2004).

noted that section 486.161(1) "is not an unfettered right for these enumerated professionals to practice physical therapy outside of their professional licenses," and concluded that a massage therapist who "performed any services without supervision, such services could only have been massage therapy services pursuant to his massage therapy license, which are no longer allowed PIP reimbursement as proscribed by Fla. Stat. § 627.736 (1)(a)." *Id.*

Similarly, in *DG Esthetic & Therapy Center*, Judge Altonaga adopted Judge Martinez's reasoning in *Quality Diagnostic Health* Care, and rejected Defendants' reading of section 486.161(1) as one that would turn the "statutory framework on its head and render so many provisions meaningless." *DG Esthetic & Therapy Center*, 2019 WL 1992930, at *6. Judge Altonaga found that "to the extent these services are performed without supervision by another licensed medical profession, they constitute *massage*, rather than physical therapy." *Id.* (emphasis in original); *see also State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 2020 WL 1063004, at *11 (S.D. Fla. Mar. 5, 2020) ("[A] licensed massage therapist's scope of practice does not permit him or her to perform anything but 'massage.'").

The Court adopts the interpretation of section 486.161(1) advanced in *Quality Diagnostic Health Care* and *DG Esthetic & Therapy Center*. Here, Plaintiffs have sufficiently alleged that the services performed by the massage therapists at Davila Medical and Westchester Medical were ineligible for PIP reimbursement, stating that: (1) they were unlawful under the Physical Therapy Practice Act, as the Medical Clinics represented these services as physical therapy to the insured and GEICO, when they

were in fact performed by individuals without physical therapy licenses[9]; and (2) they constitute massage, even if the massage therapists used "physical agents" during the service.[10]   (*Id.* at ¶¶ 196, 284.)   Accordingly, Defendants' motion is denied as to the argument that section 486.161(1) permits unsupervised massage therapists to perform lawful physical therapy without physical therapy licenses.

### B. <u>Adequate Supervision of Hernandez, Fernandez, and Rodriguez</u>

Defendant next asserts that Complaint fails to sufficiently allege that the medical services rendered by Hernandez (a physician assistant), and Fernandez and Rodriguez (physical therapist assistants) at E-Z Medical were not adequately supervised.

Under Florida law, physician assistants and physical therapist assistants may not perform medical services without adequate supervision.   For physician assistants, adequate supervision requires "the easy availability or physical presence of the licensed physician for consultation and direction of the actions of the physician assistant," which includes "the availability to communicate by way of telecommunication."   Fla. Stat. § 458.347(f).   Physician assistants may be supervised by a physician either directly or indirectly.   *See* Fla. Admin. Code 64B8-30.001(5).   Indirect supervision requires the physician to be "within close physical proximity."   *Id.*   Defendants claims that while the Complaint alleges that Mas, a physician, did not adequately supervise Hernandez *directly*, it fails to allege that Hernandez was not adequately supervised *indirectly*. Specifically, Defendants contend that GEICO has failed to plead facts showing that Mas

---

[9] *See* Fla. Stat. § 486.028 ("No person shall practice, <u>or hold herself or himself out as being able to practice</u>, physical therapy in this state unless she or he is licensed in accordance with the provisions of this chapter. . . .") (emphasis added).

[10] *See* Fla. Stat. § 627.736(1)(a)(5).

was not easily available to Hernandez by telecommunication, or that he was not within close proximity to E-Z Medical.

The Court finds that the Complaint sufficiently alleges that Dr. Mas failed to adequately supervise Hernandez either directly or indirectly. GEICO has pled facts demonstrating that Mas lacked the time and availability to provide *any* degree of supervision to Hernandez. While he was supposedly supervising him at E-Z Medical, Mas was also purportedly serving as the medical director of at least five other medical clinics, where he was responsible for supervising staff and performing large volumes of medical services daily. (Complaint at ¶ 136.) The Complaint explains that because of these commitments, Mas's presence at E-Z Medical was limited to "sporadic" visits to sign bills and treatment reports. (*Id.* at ¶ 125.) Moreover, GEICO has alleged that billing statements demonstrate that on days when Mas was purportedly supervising Hernandez, he was also either performing or supervising dozens of other healthcare services at several other clinics, making the adequate supervision of Hernandez "improbable" and "impossible." (*Id.* at ¶¶ 138, 139.) For instance, Plaintiffs have alleged that:

> On May 4, 2017, E-Z Medical, Diaz-Pairol, and Mas falsely represented that Mas legitimately supervised R. Hernandez in performing at least two examinations at E-Z Medical, which then were billed to GEICO. In fact, Mas could not legitimately have supervised R. Hernandez considering that – on that same day – Mas purported to personally perform, or at least legitimately supervise: (a) 10 patient examinations; and (b) at least 152 one-on-one physical therapy services, which were provided to patients at <u>seven</u> different locations, and all of which were billed to GEICO. In all, GEICO received billing for at least 39 hours of services that Mas purported to personally perform, or at least legitimately supervise, on May 4, 2017.

(*Id.* at ¶ 138 (emphasis in original).) In light of GEICO's detailed pleadings, and construing all factual inferences in Plaintiffs' favor, the Court finds that GEICO has sufficiently alleged

that Dr. Mas failed to adequately supervise Hernandez as required by Florida law.  And while Defendants attached self-serving affidavits of Hernandez and Mas to support their motion, in which both defendants explain that Hernandez was "under the 'in-direct' supervision of Mas by way of telecommunication, and Mas was always available within close proximity to the facility," (DE 32-1, 32-2) the Court declines to consider materials beyond the complaint when considering a Rule 12(b)(6) motion to dismiss.  *See Hernandez v. Am. Fed'n of Police, Inc.*, 2014 WL 12600144, at *1 (S.D. Fla. Mar. 7, 2014) ("When considering a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the complaint.").

Defendants next assert that the Complaint fails to sufficiently allege that Fernandez and Rodriguez were insufficiently supervised.  Florida law mandates that all "[p]atient-related activities performed by a physical therapist assistant for a board-certified" physician requires "general supervision of a physical therapist."  Fla. Stat. Ann. § 486.021. For these physical therapist assistants, "onsite supervision" is not required.  *Id.*  However, physical therapist assistants working for all other health care practitioners shall be "under the onsite supervision of a physical therapist."  *Id.*

GEICO has alleged that Mas is not a "board-certified" physician.  (Complaint at ¶ 154.)  It has also pled that Fernandez, Rodriguez, and other physical therapist assistants performed physical therapy services, but were not licensed as physical therapists, and thus, required direct onsite supervision by a physical therapist.  (*Id.* at ¶ 151.)  The Complaint states that they "reported directly" to Diaz-Pairol, the clinic's owner, who was neither a licensed physical therapist nor a physician.  (*Id.* at ¶ 19, 151.)  The Complaint also expressly states that Fernandez and Rodriguez received no "legitimate supervision

or oversight" from a "licensed physician or physical therapist." (*Id.* at ¶ 151.)  And Plaintiffs have set forth detailed, claim specific allegations demonstrating that they received no direct, onsite supervision from Dr. Mas.  (*Id.* at ¶ 158, 159.)  In construing these well-pled allegations as true, the Court finds them sufficient to establish that Fernandez and Rodriguez were inadequately supervised.  As discussed previously, the Court will not at this stage consider Defendants' affidavits on this issue.[11] *See supra* at 12.

### C. "Upcoding" Initial Examinations and Misrepresenting Mas as Physical Therapist Treater in Box 31

Defendants next argue that the Complaint fails to establish that the Medical Clinics' practices of "upcoding" initial examinations and misrepresenting Dr. Mas as the service provider in Box 31 for physical therapy services were unlawful under RICO sections 1962(c) and (d) and common law fraud.  Specifically, Defendants claim that Plaintiff cannot establish that these misrepresentations were "material," or that GEICO had "reasonably relied" on them when deciding whether to approve Defendants' PIP claims.

"Materiality" and "reliance" are essential elements for RICO claims based on mail fraud and under Florida common law fraud.  *See Adams v. Ciba Specialty Chemicals Corp.*, 2005 WL 8158577, at *6 (S.D. Ala. Feb. 21, 2005); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017).  A misrepresentation is "material" if: (1) "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in

---

[11] Defendants provided the affidavits of Diaz-Pairol and Maria De Jesus Prada, which explain that Diaz-Pairol hired Prada, a licensed physical therapist, who "provided general supervision over Defendants Fernandez and Y. Rodriguez at E-Z Medical." (DE 32-1, DE 32-2.)

question," or (2) "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Neder v. United States*, 527 U.S. 1, 22 n. 5 (1999) (citing Restatement (second) of Torts § 538 (1977)).

The crux of Defendants argument is that Plaintiffs cannot establish the elements of "materiality" and "reliance" because the Complaint "conclusively" demonstrates that GEICO was aware of these misrepresentations at the time it reviewed Defendants' claims, but decided to approve them for PIP reimbursement anyway. (DE 32 at ¶ 29.) Defendants point to the Complaints' reference to initial examination reports, which revealed that Defendants had not performed a detailed or comprehensive evaluation, or engaged in legitimate medical decision-making: prerequisites for use of billing codes 99203 and 99204. Defendants also rely on the Complaints' mention of physical therapy treatment notes, which revealed that the physical therapy services were not performed by Mas, but by unsupervised physical therapy assistants and medical assistants. Defendants claim that these documents placed GEICO on notice that the Medical Clinics had "upcoded" for initial examinations, and had misrepresented Mas as the treater in Box 31. And because Plaintiffs were aware of these schemes but approved Defendants' claims anyway, Plaintiffs cannot establish that these misrepresentations were "material," or that Plaintiffs had reasonably "relied" on them in deciding to pay out Defendants' claims.

The Court finds Defendants' arguments unpersuasive because, as Plaintiffs correctly note, they are "predicated on conclusory speculation about what GEICO knew, and when GEICO knew it." (DE 36 at 17.) Defendants incorrectly claim that the

Complaint "fatally admits" that GEICO possessed awareness of these schemes at the time it made the reimbursements.  (DE 40 at 9.)  The Complaint does not specify when the initial examination reports and physical therapy notes were available to GEICO, or whether GEICO ever had access to them at all.  To the contrary, the Complaint avers that GEICO was not aware of these practices until shortly before it initiated this lawsuit, as Defendants had actively concealed the fraud by "deliberately omit[ing]" all references to the actual physical therapist providers on the HCFA-1500 forms, and by submitting "facially-valid documents" to GEICO.  (Complaint at ¶¶ 176-177, 222-224, 310-312, 867-875.)  Moreover, the Complaint alleges that GEICO had no opportunity to detect these schemes—which require comparison of a sufficiently large pool of claims to identify—because of GEICO's statutory and contractual duty to process the claims within 30 days of receipt, an obligation GEICO was compelled to comply with to avoid lawsuits.  (*Id.* at ¶ 873.)

Accepting these well-pled allegations as true, and viewing them in the light most favorable to Plaintiffs, the Court finds that the Complaint sufficiently demonstrates that GEICO had no knowledge of these practices at the time it approved the claims.  Thus, the Court finds that Plaintiffs' allegations should, at least, be tested through discovery; it is inappropriate at this juncture to decide "as a matter of law exactly when GEICO would have been on notice of any fraud," a highly fact intensive inquiry best reserved for a trier of fact at trial.  *Gov't Employees Ins. Co. v. Strut*, 2019 WL 6338023, at *7 (W.D.N.Y. Nov. 26, 2019); *Gov't Employees Ins. Co. v. Strutsovskiy*, 2016 WL 11258223, at *7 (W.D.N.Y. Dec. 2, 2016) ("a determination as to when GEICO possessed sufficient information as to render its reliance upon such verifications unreasonable is not appropriate for summary

judgment. . ."). For these reasons, the Court finds that Defendants' other arguments, also premised on the conclusory argument that GEICO voluntarily reimbursed Defendants' claims with knowing awareness of the fraud, similarly unavailing.[12]

The Court further finds that Plaintiffs have sufficiently pled the elements of "materiality" and "reliance" as to these schemes. To establish that the "upcoding" constitutes a "material" misrepresentation, GEICO has alleged facts demonstrating that Defendants knew that GEICO attached importance to Defendants' use of billing codes 99203 and 99204 for initial examinations in deciding the amount of reimbursement, as well as whether the recommended treatments were medically necessary and reimbursable. (Complaint at ¶¶ 351-352, 476-477, 738-739.) Similarly, to demonstrate that Defendants' misrepresentation in Box 31 is "material," Plaintiffs have alleged that Defendants knew that they could not legally recover PIP benefits for the physical therapy services performed by unsupervised physical therapy assistants or massage therapists, and therefore deliberately identified Mas as the treater to induce GEICO's payment. (*Id.* at ¶¶ 135, 156, 203, 291.) Plaintiffs have also, at this stage, adequately pled "reliance" by alleging that GEICO had relied on "facially-valid" PIP claim submission documents in

---

[12] Defendants also assert that the Complaint fails to allege violations of the FDTUPA. They argue that to state a claim under FDTUPA, "a plaintiff must allege facts that the deceptive practice at issue is likely to be deceiving a consumer acting reasonably in the same circumstances," and contend that "the pleadings conclusively establish that [GEICO] acted unreasonably." (DE 32 at ¶ 44.) They also assert that Plaintiffs have not pled a violation of unjust enrichment because Defendants are entitled to rely on the "voluntary payment doctrine"—an "affirmative defense" they claim applies if a plaintiff made voluntarily payments "with knowledge" that a bill "was illegal, or that there was no liability to pay." (*Id.* at ¶ 56, 57.) Finally, Defendants argue that the Complaint fails to sufficiently plead "causation" under RICO and the FDTUPA because "GEICO admitted that it had notice of the true facts when it paid the claims." (*Id.* at ¶ 53.) The Court rejects these arguments for the reasons previously discussed. *See supra* at 13-15.

approving Defendants' claims.  (*Id.* at ¶¶ 867-875.)  *See Allstate Ins. Co. v. Ahmed Halima*, 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009) ("On a motion to dismiss, the court cannot say definitively that an insurance company that receives thousands of insurance claims could not reasonably rely on facially valid claims submitted by a licensed.").  Accordingly, Defendants' motion to dismiss is denied to the extent that it argues that GEICO has not sufficiently pled "materiality" and "reliance" under RICO[13] and common law fraud.

### D.  Falsifying Patient Examination Results

Defendants next argue that Plaintiffs have failed to establish that Mas engaged in fraudulent misrepresentation by falsifying patient examination results, contending that "opinion is not actionable for fraudulent misrepresentation."  (DE 32 at ¶ 59.)  The Court finds this argument unpersuasive.  GEICO does not seek to hold Mas liable for mistaken "opinions," and Defendants offer no justification or law for why Mas's false diagnoses and treatment plans constitute "opinion."  To the contrary, courts have found nearly identical allegations of false patient examination results actionable for fraudulent misrepresentation under the claims asserted in this case.  *See*, *e.g.*, *Strutsovskiy*, 2016 WL 11258223, at *6 (the complaint alleged that the defendants' "initial consultation reports reveal the use of boilerplate language," with "virtually identical recommendations for a limited number of pain management treatments"); *Gov't Employees Ins. Co. v. Jacques*, 2017 WL 9487191, at *8 (E.D.N.Y. Feb. 13, 2017) (the complaint alleged that the defendants "made nearly identical, predetermined 'diagnoses' for every Insured, and

---

[13] Defendants' challenge to the RICO claim is limited to GEICO's pleading as to the elements of "materiality," "reliance," and "causation."   No other arguments regarding RICO have been raised.

they prescribed an almost identical course of treatment for each Insured"); *Gov't Employees Ins. Co. v. Strut*, 2019 WL 6338023, at *6 (W.D.N.Y. Nov. 26, 2019) (the complaint alleged that "a statistically impossible number of purported initial examination reports [were] submitted by or on behalf of the Defendants [including] identical patient history language.").

Here, the Plaintiffs have alleged that Defendants submitted fake initial examination results, which misdiagnosed patients as suffering from moderate to severe health issues, and required patients to undergo medically unnecessary treatment plans.  GEICO has provided numerous, claim specific examples of patients involved in minor automobile accidents that caused no injuries or problems of low severity, as demonstrated by the contemporaneous police reports and hospital records.  (Complaint at ¶¶ 348-349, 472-474, 734-736.)  Mas nonetheless falsely diagnosed these patients as suffering from moderate to serious injuries.  *Id.*  The Complaint further alleges that Defendants provided the same "boilerplate sprain/strain 'diagnoses' to virtually every insured," and required every patient to undergo a "substantially identical course of treatment."  (*Id.* at ¶¶ 388, 517, 645.)  Furthermore, the Complaint provides several claim specific examples in which two or more patients were involved in the same minor automobile accident, and were each given identical diagnoses and treatment plans, despite differences in their age, physical condition, and location in the vehicle.  (*Id.* at ¶¶ 396-402, 524-525, 798-799.) In some instances, the examination reports also contained identical typographical errors. (*Id.* at ¶ 402.)  There are additional allegations demonstrating that the results of Defendants' follow-up examinations were also falsified.  (*Id.* at ¶¶ 413-446, 542-575, 817-860.)  In light of these detailed pleadings, the Court finds that the Complaint sufficiently

alleges that Defendants fraudulently misrepresented the results of initial and follow-up patient examinations.

### E.  The Clinic Act

Defendants argue next that Plaintiffs have failed to sufficiently allege that the Medical Clinics operated in violation of the Clinic Act to the extent that the Complaint suggests that Mas neglected to take corrective actions against the practices of "upcoding" initial examinations, misrepresenting Mas as the service provider in Box 31, and falsifying the results of patient examinations.  Defendants repeat their previously raised arguments for why each of these practices is not fraudulent or unlawful, and contend that Mas was therefore not obligated under the Clinic Act to take remedial action.  Under the Clinic Act, "[u]pon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action." Fla. Stat. § 400.9935.

The Court finds this argument unavailing because as previously explained, Plaintiffs have, at this stage, sufficiently alleged that each of these practices is fraudulent and unlawful.  *See supra* sections III.C and III.D.  Thus, because Plaintiffs have alleged that Mas failed to take corrective measures against these and other fraudulent practices, and that Mas failed to serve as a legitimate medical director at all, the Complaint adequately alleges that the Medical Clinics operated in violation of the Clinic Act. (Complaint at ¶¶ 54-72, 73-87, 104-118.)

### F.  Rule 9(B)

Finally, Defendants argue that certain of Plaintiffs' fraud based allegations fail to satisfy the particularity requirement of Rule 9(b).  First, Defendants claim that Plaintiffs' allegations against Defendants are improperly "lumped together" throughout the

Complaint.  For each Medical Clinic, the Complaint defines the owner, staff, and company collectively—*i.e.*, as "E-Z Medical Defendants," "Davila Medical Defendants," and "Westchester Medical Defendants."  Defendants maintain that the allegations in which the Plaintiff alleges fraudulent activity against all members of a medical clinic collectively are insufficient under Rule 9(b).  Second, Defendants argue that Plaintiffs' allegations that the Medical Clinics billed for illusory services that were not actually provided are "conclusory," contending that GEICO has alleged no facts with particularity to support.

Rule 9(b) requires that in alleging fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  For "RICO and fraud claims, GEICO is required to allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements mislead GEICO; and (4) what the defendants gained by the fraud." *Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC*, 2014 WL 12617566, at *3 (M.D. Fla. Mar. 6, 2014) (internal citation and brackets omitted). "Where multiple defendants are involved, the complaint must contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together." *Id.*

The Court finds Defendants' "group pleading" argument unpersuasive because while "GEICO has lumped the Defendants together in certain portions of [the Complaint], this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme." *Id.*  To satisfy the requirements of Rule 9(b) at the pleading stage, GEICO "is required only to plausibly allege that each Defendant knowingly carried out their part in the alleged

scheme." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 785 (E.D. Mich. 2015). Here, GEICO has pled facts, with specificity, informing each individual defendant of his or her contribution to the scheme. For instance, the Complaint alleges that Diaz-Pairol recruited Mas as a fake "medical director" so that he could operate "E-Z Medical as a vehicle to submit a massive amount of fraudulent PIP billing to GEICO and other insurers." (Complaint at ¶¶ 54-72.) It also contains claim specific allegations of Diaz-Pairol directing the staff to engage in unlawful billing practices and to falsify patient examination results. For instance, it states that:

> On February 11, 2017, two Insureds—JR and IZ were involved in an automobile accident. In keeping with the fact that JR and IZ were not seriously injured in the minor accident, neither JR nor IZ visited any hospital following the accident. To the extent that JR and IZ experienced any health problems at all as a result of the minor accident, they were of low severity. Even so, following purported initial examinations of JR and IZ by or under the supervision of Mas on February 16, 2017, E-Z Medical and Mas—at the direction of Diaz-Pairol— falsely reported that JR and IZ suffered from high levels of pain in the cervical, thoracic, and lumbar spine, as well as both shoulders, both elbows, and both wrist, and knees, and that both parties "suffered an EMERGENCY MEDICAL CONDITION, as a result of the accident. . . . "

(*Id.* at ¶¶ 397, 402 (emphasis added).) Attached to the Complaint is Exhibit 1[14], a chart of the bills GEICO received from E-Z Medical for patients Diaz-Pairol had directed the staff to fraudulently diagnose as suffering from "virtually identical neck and back injuries." (*Id.* at ¶ 399.) Bills 5744 and 5801 listed in Exhibit 1 correspond to JR and IZ's initial examinations. (DE 1-1.) For both bills, E-Z Medical used CPT billing code 99204 and charged GEICO $350 for the service. *Id.*

---

[14] GEICO also provided charts of the bills it received from the other Medical Clinics. Exhibits 2 and 4 correspond to Davila Medical and Westchester Medical, respectively.

As to Mas, Plaintiffs have alleged that he accepted compensation from Diaz-Pairol and agreed to falsely represent to the Florida Agency for Health Care Administration, patients, and PIP insurers that he was E-Z Medical's legitimate medical director. *Id.* Moreover, the detailed allegations of unlawful medical services and fraudulent billing practices by Mas and other staff "demonstrate that E-Z Medical was operated without a legitimate medical director," and Mas's neglect of his statutory duties under the Clinic Act. (Complaint at ¶¶ 182-190.)  Plaintiffs have also pled claim specific allegations of Mas falsifying patient examination results, and fraudulently misrepresenting himself as supervisor or treater of medical services in billing statements.  For instance, GEICO has alleged:

> On March 23, 2017, E-Z Medical, Diaz-Pairol, and <u>Mas falsely represented that Mas legitimately supervised R. Hernandez in performing at least one patient examination at E-Z Medical, which then was billed to GEICO</u>.  In fact, Mas could not legitimately have supervised R. Hernandez considering that – on that same day – Mas purported to personally perform, or at least supervise: (a) six patient examinations; and (b) at least 72 additional physical therapy services, which were provided to patients at <u>five</u> different locations, and all of which were billed to GEICO.  In all, GEICO received billing for at least 20 hours of services that Mas purported to personally perform, or at least legitimately supervise, on March 23, 2017.

(*Id.* at ¶ 137 (emphasis added).)  Exhibit 1 lists the bills that GEICO received for medical services that "Mas falsely purported to personally perform or directly supervise."  (*Id.* at ¶ 448, DE1-1.)  Bill 6265 corresponds to the March 23, 2017 patient examination, and Exhibit 1 shows that GEICO was charged $350 for the service.  (DE 1-1.)

As to Hernandez, Fernandez, and Rodriguez, Plaintiffs have pled claim specific examples of their performance of medical services without the requisite licenses or supervision.  (*Id.* at ¶¶ 120-190.)  For instance, GEICO has alleged:

On or about April 29, 2016, the E-Z Medical Defendants billed GEICO for physical therapy services that were provided through E-Z Medical to an Insured named LF on April 15, 2016. The HCFA-1500 form falsely represented that Mas performed, or at least directly supervised, the pertinent physical therapy services, and the E-Z Medical Defendants deliberately omitted reference to Y. Rodriguez from the HCFA-1500 form. However, the underlying physical therapy notes were signed by Y. Rodriguez, in keeping with the fact that the pertinent services were performed – to the extent that they were performed at all – by Y. Rodriguez, without any legitimate supervision by Mas.

(*Id.* at ¶ 178. (emphasis added).)  Exhibit 1 identifies bills for the services performed by Hernandez, Fernandez, Rodriguez and that were ineligible for PIP reimbursement.  (*Id.* at ¶ 448; DE 1-1.)  For instance, bill number 2735 corresponds to the physical therapy service that Rodriguez performed on April 15, 2016.  (DE 1-1.)  Exhibit 1 shows that E-Z Medical billed GEICO $120 for the service.  *Id.* The Complaint also contains similar pleadings that inform, with specificity, each individual defendant at Davila Medical and Westchester Medical of his or her role in the scheme.  (Complaint at ¶¶ 191-231, 277-321, 457-585, 715-860; DE 1-2; DE 1-4.)  Accordingly, the Complaint satisfies the Rule 9(b) requirement because "[e]ach of the Defendants is on fair notice of what it is they are alleged to have done for their part in carrying out the alleged fraudulent scheme to obtain payment for medically unnecessary services and tests."  *Pointe Physical Therapy, LLC*, 107 F. Supp. 3d at 785; *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp.*, Inc., 2014 WL 5427170 (E.D. Mich. Oct. 24, 2014).

The Court also finds that Plaintiffs have sufficiently alleged that Defendants billed for illusory services that were never actually performed.  The Complaint alleges several claim specific instances for each Medical Clinic where Defendants billed GEICO for patient examinations under CPT codes 99203 and 99204—thereby representing that the

examinations involved "detailed" or "comprehensive" evaluation of the insureds'

musculoskeletal systems—when in fact, these evaluations were never conducted.  (*Id.* at

¶¶ 353-412, 478-541, 740-816.)  For instance, GEICO has alleged:

> On January 26, 2017, E-Z Medical, Diaz-Parol, and Mas billed
> GEICO under CPT code 99204 for an initial examination that
> Mas purported to perform or supervise on an Insured named
> MF, and thereby represented that they had provided a
> "comprehensive" physical examination to MF.  <u>However, Mas
> did not document findings with respect to at least eight of the
> Insured's organ systems, nor did he document a "complete
> examination of the Insured's musculoskeletal systems or any
> of the Insured's other organ systems.</u>

(*Id.* at ¶ 372 (emphasis added).)  Bill number 5426 corresponds to this examination, and

Exhibit 1 shows that GEICO was charged $350 for the service.  (DE 1-1.)  The Court finds

these detailed allegations sufficient to satisfy the particularity requirement of Rule 9(b).

Accordingly, the motion to dismiss is denied as to Defendants' challenge to the Complaint

under Rule 9(b).

IV.   **CONCLUSION**

For the reasons stated above, it is **ORDERED AND ADJUDGED** that Defendants'

motion to dismiss (DE 32) is **DENIED.**

**DONE AND ORDERED** in chambers in Miami, Florida, this <u>31st</u> day of March,

2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE