## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21183-Civ-WILLIAMS/TORRES

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY, and
GEICO CASUALTY CO.,

      Plaintiffs,

v.

LUIS LOPEZ MAS, *et al.*,

      Defendant.

_____/

## ORDER ON DEFENDANT'S *DAUBERT* MOTION

This matter is before the Court on Dr. Luis Mas's ("Defendant" or "Dr. Mas") motion to strike the expert opinion testimony of Government Employees Insurance Co.'s, GEICO Indemnity Co.'s, GEICO General Insurance Company's and GEICO Casualty Co.'s (collectively, "Plaintiffs") expert, Dr. James Dillard ("Dr. Dillard"). [D.E. 92].  Plaintiffs responded to Defendant's motion on November 12, 2020 [D.E. 110] to which Defendant replied on November 20, 2020.  [D.E. 124].  Therefore, Defendant's motion is now ripe for disposition.  After careful review of the motion, response, reply, and for the reasons discussed below, Defendant's *Daubert* motion is **DENIED**.[1]

_____

[1]     On October 29, 2020, the Honorable Kathleen Williams referred Defendant's *Daubert* motion to the undersigned Magistrate Judge for disposition.  [D.E. 93].

## I.  BACKGROUND

Plaintiffs filed this action on March 28, 2018, seeking redress for violations of the Racketeer Influenced and Corrupt Organizations Act, the Florida Deceptive Unfair Trade Practices Act, the Florida Civil Remedies for Criminal Practices Act common law fraud, unjust enrichment, and declaratory relief.   [D.E. 1].   The complaint alleges that Defendants submitted thousands of fraudulent insurance charges related to unnecessary, illusory, unlawful or otherwise unreimbursable health care services.   *See id.*   Plaintiffs also claim that Defendants misrepresented coding levels on billing statements and changed healthcare professionals who administered treatments on examination reports.   To the extent medical services were rendered, Plaintiffs suspect that unsupervised massage therapists and/or physical therapist assistants performed medical services that were billed in place of doctors.   Because of this widespread deception, Plaintiffs seek compensatory damages, court costs, interest, and fees.

## II.  APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony.  *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).  As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.  The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a

2

preponderance of the evidence.[2]  *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence.  *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

---

[2]    Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted).  The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them."  *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted).  The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate."  *Daubert*, 509 U.S. at 594-95.  It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the

jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).   Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.   It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).   The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III.  ANALYSIS

Defendant's motion[3] seeks to exclude Dr. Dillard's opinions because they cannot be used to prove that Dr. Mas falsified any medical examinations or billing records.  More specifically, Defendant takes aim at how Dr. Dillard opined that healthcare providers committed fraud in the following three ways: (1) that Dr. Mas falsified his clinical judgment on the medical necessity of the treatment protocols, (2) that Dr. Mas and others falsified the examination results for the purpose of inflating medical bills, and (3) that the therapeutic care at each facility was performed without supervision.  Defendant's argument rests on the proposition that, under Florida law, *opinions* are not actionable for fraud because Dr. Dillard needed to rely on statements of *fact* if he intended to undermine Dr. Mas.

Plaintiffs argue, in response, that the motion has no merit because it includes conclusory arguments and fails to question Dr. Dillard's qualifications or his helpfulness to the jury.  Plaintiffs also claim that, to the extent Defendant takes issue with the reliability of Dr. Dillard's opinions, those contentions are equally misplaced because there has been no showing that the underlying methodology is inappropriate or unreliable.[4]  Indeed, Plaintiffs state that Dr. Dillard's opinions meet all the requirements under *Daubert* because they give a plausible explanation as to all the irregularities contained within Defendant's billing records.  Therefore,

---

[3]    Although all co-defendants joined in the relief sought, we refer only to Dr. Mas as the party seeking relief because he is the named defendant who filed the pending motion.

[4]    Plaintiffs suggest that it is difficult to understand Defendant's motion because the arguments presented are unclear, conclusory, and fail to present any substantive reasons in support of the relief sought.

Plaintiffs request that Defendant's motion be denied in all respects and that Dr. Dillard be allowed to testify as to all the opinions contained in his expert report.

Under Florida law, "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) (citing Florida cases); *see also Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994) ("A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact.") (citing *Chino Elec., Inc. v. United States Fidelity & Guar. Co.*, 578 So. 2d 320 (Fla. 3d DCA 1991)).   There are well-recognized exceptions, however, where "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false." *Mejia*, 781 So. 2d at 1177 (citing cases).   In addition, if "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform," then  "such a promise may also constitute a fraudulent misrepresentation." *Id*.

Defendant argues that the Third District's decision in *Mejia* is dispositive of the question presented because, although Dr. Dillard criticizes the way in which Dr. Mas handled the billing records and the treatment plans in this case, any disagreement takes aim at an opinion – not a statement of fact.  The problem with Defendant's argument is that, even if Dr. Mas only rendered a statement of opinion,

7

an exception applies because Dr. Mas was the medical director of several clinics and a supervisor for both physician assistants and nurse practitioners. [D.E. 87-1 at 1]. That means that he was a person "having superior knowledge of the subject of the statement," *Mejia*, 781 So. 2d at 1177, because he examined "most, if not all, of the patients in this case either initially or in a follow up exam," and he used his professional training and experience to find that the treatment provided was medically necessary. [D.E. 87-1 at 1]. The second part of the exception also applies because there is evidence in the record that Plaintiffs can prove, through Dr. Dillard, that Dr. Mas "knew or should have known from facts in his . . . possession that the statement was false." *Mejia*, 781 So. 2d at 1177.

Defendant disagrees and claims that the Third District's decision in *Mejia* supports its case. But, that case actually hurts, rather than helps, Defendant's argument. There, a group of home purchasers sued several defendants with allegations that they were fraudulently induced into signing agreements for the purchase of real estate prior to closing. The defendants argued, in part, that a fraud in the inducement claim could not survive a motion to dismiss because any statement that was made only constituted mere puffery or salesmanship as opposed to a statement of fact. The Third District ultimately reversed the dismissal of the plaintiffs' claims because the plaintiffs alleged that they relied on the salespersons in the execution of the purchase agreements and the Court found that those positions gave the salespersons superior knowledge of the subject of the statement. *See id.* at 1178 ("[A]ppellants have alleged that they relied on the representations

8

made by appellee because of her position as an experienced and knowledgeable . . . sales agent. As such, appellants were entitled to consider appellee's representations as statements of facts and not mere puffing or salesmanship."). The Appellate Court also determined that there were allegations that the defendants knew the statements were false and that defendants had no intention of performing. As such, the Court concluded that the allegations fell within an exception to the general rule and that the trial court erred in dismissing the case.

The same reasoning applies here because Dr. Mas had superior knowledge of his statements when he rendered his medical opinions. This is supported with Dr. Mas's own statements where he admitted that he evaluated most, if not all, of the patients who received medical services. In fact, Plaintiff's argument is far stronger in this case when compared to *Mejia* because – unlike an experienced salesperson – this case concerns a medical professional who supervised and developed treatment plans for patients. The second part of the exception also applies because Plaintiffs have evidence, through Dr. Dillard, that Dr. Mas knew or should have known from the facts in his possession that patients were treated for unnecessary medical services, or that billing records were inflated to increase medical costs. Therefore, *Mejia* does nothing to support Defendant's motion because, unlike that case, there is an even stronger argument that an exception applies here.

Defendant claims that the Eleventh Circuit's decision in *United States v. AseraCare*, 938 F.3d 1278 (11th Cir. 2019), provides further support for the exclusion of Dr. Dillard. Defendant argues that, in *AseraCare*, the Court held that

an expert opinion based on a review of treatment records is, by itself, insufficient to prove that a prior opinion was false. This argument is unpersuasive, in large part, because *AseraCare* explored the question of how to determine falsity under the False Claims Act (the "FCA") – a statute that is noticeably not at issue in this case.

Putting that aside, Defendant's reliance on *AseraCare* fails for an entirely separate reason because of the principles that the Court identified. While the Court stated that "a reasonable difference of opinion among physicians reviewing medical documentation *ex post* is not sufficient on its own to suggest that those judgments— or any claims based on them—are false under the FCA," that was not the end of the analysis. *Id*. at 1297. Defendant relies heavily on this sentence and concludes that the same result should be reached in this case because Dr. Dillard has done nothing more than cast doubt on another doctor's medical opinion. And because Dr. Dillard's opinion is no better than another opinion, Defendant concludes that Plaintiffs cannot prove that any fraud occurred.

Defendant has made an analytical misstep because it overlooked the remaining parts of *AseraCare*, where the Court found that a plaintiff can state a claim under the FCA if he or she identifies facts and circumstances that are inconsistent with the proper exercise of a physician's clinical judgment. *Id*. ("[T]o properly state a claim under the FCA in the context of hospice reimbursement, a plaintiff alleging that a patient was falsely certified for hospice care must identify facts and circumstances surrounding the patient's certification that are inconsistent with the proper exercise of a physician's clinical judgment."). That is exactly what

10

Dr. Dillard has done in this case because he opines that, when Dr. Mas reviewed billing and treatment records, he was either aware of the misrepresentations in the documents or he failed to conduct a review of those records. It is therefore unclear as to how Defendant can conclude that Dr. Dillard should be excluded when he fits squarely within the exception provided in *AseraCare* – assuming, of course, that this case has any relevance and should be applied in the first place.

*AseraCare* also raises the question as to whether Dr. Mas rendered an opinion at all because there is some evidence that he failed to review any of the necessary medical records to prevent overbilling. Defendant assumes that this is cannot be true and that Dr. Dillard should be stricken anyway. But, Defendant never explains why Dr. Dillard's opinion lacks reliability if the irregularities in the records can be explained by Dr. Mas's failure to conduct any legitimate review of those items. In fact, the Eleventh Circuit contemplated this exact circumstance in *AseraCare* because – if it can be shown that a physician (i.e. Dr. Mas) never considered any records to support an opinion or a clinical judgment – that physician has, in effect, failed to render any opinion at all:

> [I]n examining whether a physician's clinical judgment was truly communicated, the latter must first have actually exercised such judgment. If it can be shown that the physician never considered the underlying records supporting the prognosis at issue, but instead rubber-stamped whatever file was put in front of him, then the physician has offered no clinical judgment. Moreover, an opinion can enter falsifiable territory when it is based on information that the physician knew, or had reason to know, was incorrect.

*Id.* at 1302.  And if an opinion has not been provided, it is unclear why Plaintiffs should be prohibited from exploring that possibility if they have an expert that can support that argument with evidence for a jury to consider.

This brings us full circle because it shows the weaknesses throughout Defendant's motion.  The first is that Defendant makes an assumption that Dr. Mas rendered an opinion.  That is not at all clear if he merely rubber-stamped the documents that other healthcare providers completed.  And if Plaintiffs can present evidence to that effect (as Dr. Dillard suggests in his expert report), the rule on using an opinion to pursue a fraud claim never comes into play.  The second is Defendant's decision to cherry-pick portions of cases to support the argument that Dr. Dillard cannot undermine the work of Dr. Mas.  That is unpersuasive because it assumes the end result of this case without allowing a jury to consider the evidence and to weigh it accordingly.   The third weakness is that Defendant assumes that no exception applies to undermine the opinion of Dr. Mas.   But, based on the allegations and the evidence in Dr. Dillard's expert report, an exception can apply because there is a factual dispute on Dr. Mas's involvement with how several medical facilities handled treatment and billing records.  Defendant seeks to bypass these factual disputes with assumptions that an exception cannot apply, but that determination is for a jury to decide.  Accordingly, Defendant has failed to present any compelling argument that Dr. Dillard should be stricken and therefore the motion to strike must be **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's *Daubert* motion [D.E. 92] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of December, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge